**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.M.**

**No. 22-641** (Harrison County 21-JA-182-1)

## MEMORANDUM DECISION

Petitioner Mother C.M.[1] appeals the Circuit Court of Harrison County's July 12, 2022, order terminating her parental, custodial, and guardianship rights to A.M.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The DHHR filed an abuse and neglect petition in July of 2021 alleging that the parents were homeless, abused substances, and engaged in domestic violence. According to the DHHR, petitioner and the father were "fighting in front of the child" and that "when they fight, . . . it turns physical." The petition also alleged that the parents had recently been arrested for felony child neglect creating risk of injury after the parents and child were found parked at a fuel pump asleep in their vehicle, which contained fentanyl and other drugs. Finally, the petition alleged that the father's rights to an older child had previously been involuntarily terminated.

In September of 2021, petitioner stipulated to several allegations in the petition, and the court adjudicated her of neglecting the child. The following month, the court granted petitioner a post-adjudicatory improvement period. As terms and conditions of the improvement period, petitioner participated in parenting education, adult life skills services, drug screens, visitation with the child, and individual and couple's counseling.

In March of 2021, the multidisciplinary team ("MDT") was informed that petitioner appeared for services with a black eye earlier that month. According to a provider, petitioner claimed the bruising was an accident and that she did not wish to speak about it. A second provider

---

[1]Petitioner appears by counsel Allison S. McClure, who indicates that the brief was filed "pursuant to . . . Rule 10(c)(10) of the West Virginia Rules of Appellate Procedure." The West Virginia Department of Health and Human Resources ("DHHR") appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Lee Niezgoda. Jenna L. Robey appears as the child's guardian ad litem.

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

1

asked petitioner if the father caused the bruising, to which petitioner responded that "it isn't the first time." The following month, the court held a status hearing, during which petitioner denied that any domestic violence occurred between the parents.

At the final dispositional hearing in May of 2022, petitioner admitted that some domestic violence occurred in the home. However, petitioner minimized the incidents by saying that the father simply "tr[ied] to keep [her] from going out the door," but explained that she's "extremely clumsy, so, it's like [she] fall[s] over all the time." In reference to the incident in which she received a black eye, petitioner explained that "it was from being clumsy" during a disagreement with the father where some "slight shoving around" occurred. Petitioner also denied that the father ever put his hands on her anywhere other than her shoulders and never caused her bruising. Based on the testimony, the court found that "[n]either of the [parents] have admitted to domestic violence within the relationship . . . , nor have they admitted to the impact witness[ing] domestic violence has on a child." The evidence also established that domestic violence had been an ongoing issue in the parent's relationship, with the court citing an incident in 2021 where the father ran over petitioner with a trailer, "causing injuries to [petitioner's] hip, leg[,] and chest, and culminating in a broken collarbone." According to the court, despite the DHHR's offer of extensive services, petitioner simply "failed to acknowledge the significant domestic violence that is present and ongoing in the relationship." Additionally, the court concluded that although petitioner participated in services, she did not "mak[e] any changes to address the issues of neglect, which are present in the home due to [her] failure to acknowledge the problem." As such, the court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her rights was necessary for the child's welfare. The court then terminated petitioner's parental, custodial, and guardianship rights to the child, and further denied her post-termination visitation, finding that such continued contact would not be in the child's best interests.[3] It is from the dispositional order that petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, petitioner first argues that it was error to deny her motion for an extension of her post-adjudicatory improvement period. In order to obtain such an extension, West Virginia Code § 49-4-610(6) requires a court to find, in part, "that the [parent] has substantially complied with the terms of the improvement period." While it is true that petitioner participated in many of the requirements of her improvement period, she ignores the fact that the circuit court explicitly found that her participation in services was not meaningful because she did not make any changes to address the issues that necessitated the petition's filing. This is especially true concerning domestic violence, as that condition persisted throughout the proceedings. Petitioner also ignores that a circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Given that the circuit court found that petitioner failed to acknowledge the domestic violence in the home and its impact on the child, we find no abuse of that discretion as petitioner foreclosed improvement by virtue of her failure to acknowledge the issue. *In re*

---

[3]The father's parental rights were also terminated, and the permanency plan for the child is adoption in the current placement.

*Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) ("Failure to acknowledge the existence of the problem . . . results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.").

Even though petitioner made a tepid admission to "some" domestic violence at the dispositional hearing, she admitted to previously being untruthful about the issue at a prior hearing and with some service providers. Further, the court discounted petitioner's admission to domestic violence, in which she repeatedly described herself as "clumsy" in an attempt to minimize the issue, and ultimately concluded that this did not amount to an actual acknowledgment of the issue. This is a credibility determination that we refuse to disturb on appeal. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Accordingly, petitioner is entitled to no relief in regard to her first assignment of error.

Next, petitioner argues that it was error to terminate her parental, custodial, and guardianship rights. Petitioner again relies on evidence of her participation in services without recognizing that the court found that this participation did not result in meaningful change. As we have explained, "it is possible for an individual to show 'compliance with specific aspects of the case plan' while failing 'to improve . . . [the] overall attitude and approach to parenting.'" *In re Jonathan Michael D.*, 194 W. Va. 20, 27, 459 S.E.2d 131, 138 (1995) (citation omitted). Further, petitioner cites to her clean drug screens as evidence that "she had corrected the issue that led to the filing of the case—her drug abuse." This argument misstates the record, as petitioner was adjudicated for more than just substance abuse. Petitioner also ignores the fact that the court's conclusion that she failed to acknowledge the domestic violence in the home rendered her incapable of remedying that issue.

Petitioner is correct that West Virginia Code § 49-4-604(c)(6) requires a court to find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future and that termination is necessary for the child's welfare in order to terminate these rights. As explained, the court did not err in concluding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect because of her refusal to acknowledge the domestic violence at issue. Further, the evidence supports the court's finding that termination was necessary for the child's welfare, as the court correctly noted that the then-two-year-old child was "more susceptible to illness, need[ed] consistent close interaction with fully committed adults, and [was] likely to have [her] emotional and physical development retarded by numerous placements." *In re Lacy P.*, 189 W. Va. 580, 584, 433 S.E.2d 518, 522 (1993) (citation omitted). Petitioner further argues that the court should have imposed disposition under West Virginia Code § 49-4-604(c)(5), which permits a court to "commit the child temporarily to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.". However, we find this argument unavailing, as West Virginia Code § 49-4-605(c)(5) provides only for *temporary* measures, while the court explicitly found that permanency was required. Because the court had ample evidence upon which to make the necessary findings, we find no error in the termination of petitioner's parental, custodial, and guardianship rights to the child.

Finally, petitioner argues that it was error to deny her post-termination visitation with A.M. because she shares a bond with the child, who "knows who her mom is." In support of this assertion, petitioner cites her own self-serving testimony about the child's excitement for visits with petitioner, but she does not cite any evidence to corroborate her claims. On the contrary, we have explained that "[o]ur cases indicate that a close emotional bond generally takes several years to develop." *In re Alyssa W.*, 217 W. Va. 707, 711, 619 S.E.2d 220, 224 (2005). We have also explained that post-termination visitation is only appropriate if, among other considerations, there is "a close emotional bond . . . between parent and child" and when "[t]he evidence . . . indicate[s] that such visitation or continued contact . . . would be in the child's best interest." Syl. Pt. 11, in part, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002) (citation omitted). Here, the child was two years old at the time of the dispositional hearing and had been outside petitioner's care for approximately ten months. Citing the child's need for permanency and tender age, the court concluded that post-termination visitation was not in the child's best interests, and we agree. As such, petitioner is entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 12, 2022, order is hereby affirmed.

Affirmed.

**ISSUED**: May 16, 2023

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn